Steven L. Rinehart (USB #11494)
**VESTED LAW, LLP**
110 S. Regent Street, Suite 200
Salt Lake City, UT 84111
Telephone: (888) 941-9933
Mobile: (801) 347-5173
Facsimile: (801) 665-1292
Email: srinehart@vestedlaw.com
*Attorney for Plaintiff*

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JIVE Commerce, LLC D/B/A Vino Grotto, a Utah limited liability company;<br><br>                                        Plaintiff,<br><br>vs.<br><br>Wine Racks America, Inc. D/B/A Premier Wine Cellars, a Utah corporation; and Jeffrey Ogzewalla, an individual;<br><br>                                        Defendants. | Case No. 1:18-cv-49<br><br>**FIRST AMENDED VERIFIED COMPLAINT**<br><br>Magistrate Judge Paul Warner |

COMES NOW Plaintiff JIVE Commerce LLC D/B/A Vino Grotto ("Vino Grotto"), by and through counsel undersigned, and for cause of action against Defendants hereby alleges and claims as follows:

### PARTIES, JURISDICTION AND VENUE

1.     Plaintiff JIVE Commerce LLC D/B/A Vino Grotto ("Vino Grotto") is a Utah limited liability company in good standing with its principal place of business in Davis County, Utah.

2.      Defendant Wine Racks America, Inc. (WRA) D/B/A Premier Wine Cellars ("Wine Racks America") is a corporation formed under the laws of the State of Utah with its principal place of business in Davis County, Utah.

3.      Premier Wine Cellars is a DBA of Wine Racks America, Inc.

4.      Defendant Jeffrey Ogzewalla ("Ogzewalla") is an individual residing in Davis County, Utah, and the controlling shareholder of WRA.

5.      This is an action for unfair competition and false and misleading advertising under inter alia Section 43 of the Lanham Act, 28 U.S.C. § 1125 and 15 U.S.C. § 1052 et seq.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1338(b) and 1331 because claims arise under § 43 of the Lanham Act, codified at 15 U.S.C. § 1125.  This Court also has jurisdiction under 28 U.S.C. § 1332 and 1338(a); and under Utah Code Ann. § 78-27-24 (1996) through Fed R. Civ. P. 4(K)(1)(A), as well as supplemental jurisdiction over pendant claims pursuant to 28 U.S.C. § 1367.

6.      Venue in this district is proper under 28 U.S.C. §§ 1391 and 1400(b), and under 15 U.S.C. §§ 1125.

7.      This Court has personal jurisdiction of Defendants because, *inter alia*, they reside and do business in the State of Utah pursuant to Utah Code Ann. § 78B-3-307(1)(b) and 78B-3-205 et seq.

## GENERAL ALLEGATIONS

*Introduction*

8.      The owners of Plaintiff Vino Grotto and Defendant WRA were formerly associated and are now in competition with one another.  In a vindictive attempt to put Vino Grotto out of business, Defendants have created a website which copies content wholesale from

Plaintiff's website, stealing images, trade dress and common law trademarks for the purpose of confusing visitors and potential customers of Vino Grotto. Defendants have contacted virtually all of Plaintiff's suppliers demanding they stop doing business with Plaintiff as a condition of their continued business with Defendants. In the course of these conversations and communications, Defendants have repeatedly defamed Plaintiff. Defendants have offered Plaintiff's suppliers money to lock Plaintiff out of the market. Defendants are running cost per click advertisement on Plaintiff's trademarks on search engines to steal Plaintiff's customers. Defendants have posted numerous false reviews on the Internet to steal market share, including numerous false five star reviews meant to conceal or dilute the effect of numerous legitimate one star reviews of Defendants' products. Defendants have attempted to drive other competitors out of the market using "click fraud" techniques. Defendants have forged photographs and address information online to create the illusion of legitimacy, including photoshopping signage onto buildings to create the impression of established operations in far-flung geographic regions. Defendants have engaged in ongoing concerted, anticompetitive, tortious and unlawful actions all calculated to interfere with Plaintiff's economic relations and put Plaintiff out of business in violation of federal and state statutes and common law.

### *Defendants' Background & Association with Plaintiff*

9.   Vino Grotto began doing business in 2014 selling wine storage and cellar racks commonly used in residences.

10.  Vino Grotto's managing member is currently, and at all times relevant has been, Jason Miller, a resident of Davis County.

11. Prior to April of 2014, Jason Miller was an employee of Defendant WRA, with its principal place of business in Davis County.

12. Going back to 1998, Mr. Miller and Defendant WRA's president Defendant Jeffrey Ogzewalla were friends who had worked together on a number of startups.

13. Originally Mr. Miller and Mr. Ogzewalla were inspired to sell wine racks by a client of Plaintiff's principal Jason Miller. Screenshots of the 2002 website and products sold are attached hereto as **Exhibit A**.  Around 2002, Mr. Ogzewalla bought out Mr. Miller's ownership for $2,500.  Mr. Ogzewalla now misrepresents the origins of WRA in Yelp! postings online as manifest by **Exhibit B** hereto.

14. Later Mr. Miller was again employed by WRA with the promise he would be given equity in WRA.  Mr. Ogzewalla exchanged a number of proposals with Mr. Miller which would have given Mr. Miller ownership in WRA, including those attached hereto as **Exhibit C**.   None of these were acceptable to Mr. Miller because each, inter alia, proposed making Mr. Miller personally responsible for WRA debts in exchange for the equity position Mr. Miller believed had been promised him, as well as numerous other objectionable terms.

15. Mr. Miller noted Mr. Ogzewalla's tendency towards vindictive and unlawful behavior as manager of WRA during Mr. Miller's association with him, including actions by Mr. Ogzewalla such as putting up a website at <oldtownwineracks.com> showing a picture of a former WRA employee coming out of a horse's behind. This employee had started a competing wine rack business at <oldtownwineracks.com> attached hereto as **Exhibit U** towards which Mr Ogzewalla openly stated his resentment. Mr. Ogzewalla later purchased the domain <oldtownwineracks.com> after the business did not succeed. Mr.

Ogzewalla repeatedly and openly bragged to employees that he was putting competitors out of business using unlawful means, such as <grottocellars.com> by repeatedly committing "click fraud" on their online cost-per-click advertisements (i.e., by repeatedly clicking the advertisements of WRA's competitors every morning until the competitor's advertising budget was depleted and ads removed from MSN, Yahoo and Google paid searches for each day). Defendant stated he could deceive search engines by erasing browser history and using internet masking software.

16.     In another notable instance, Mr. Ogzewalla became upset when a former WRA employee named Christopher Bender left and began working for a competitor Paul Wyatt Designs <paulwyattdesigns.com>. Mr. Ogzewalla emailed this new employer while feigning to be a prospective customer with false complaints about Mr. Bender's performance and his ability to follow up on purchase inquiries.

17.     Unable to reach an acceptable agreement for equity in WRA and unhappy with Mr. Ogzewalla's management of WRA, on March 31, 2014, Mr. Miller submitted his resignation as an employee of WRA, effective at the end of that day.

18.     Thereafter, Defendants withheld Mr. Miller's paycheck without cause, demanding in emails and documents collectively attached hereto as **Exhibit D** that Mr. Miller sign noncompetition agreements to receive the pay to which Mr. Miller was already entitled, as well as attempting to impose numerous other obligations on Mr. Miller including releases of all claims against WRA.

### *Defendants' Unlawful Attempts to Put Plaintiff Out of Business*

19.     On, or about, April 1, 2014, Mr. Miller's began working full time with a competing startup operation Vino Grotto, Plaintiff to this matter.

20.    Since then, Plaintiff has been victimized by numerous vindictive, tortious, anti-
competitive and otherwise unlawful actions of Defendants, all in an attempt to put
Plaintiff out of business.

21.    After Miller began working for Vino Grotto, upon information and belief, Defendants
began contacting Plaintiff's suppliers, vendors and contractees insisting Plaintiff's
suppliers/contractees stop doing business with Vino Grotto as a condition of their
continued association with WRA while also making false and defamatory comments
about Plaintiff and Plaintiff's principals.  These contacts include:

(a) Ogzewalla contacted Tom Schneider at WhisperKool, as supplier of both Plaintiff and
WRA, and demanded WhisperKool cease doing business with Plaintiff as a condition
of WRA's continued association with Defendants, as fact affirmed by WhisperKool
in emails.

(b) Ogzewalla contacted Wayne Bailey at Creekside Manufacturing as supplier to
Plaintiff and former supplier of WRA, and demanded Creekside Manufacturing cease
doing business with Plaintiff as a condition of WRA's continued association with
Creekside Manufacturing, making numerous false and defamatory comments about
Plaintiff.

(c) Ogzewalla contacted Charles Malek at VintageView, as supplier of both Plaintiff and
WRA, and demanded VintageView cease doing business with Plaintiff as a condition
of WRA's continued association with VintageView, making numerous false and
defamatory comments about Plaintiff.

(d) Ogzewalla contacted Ben Argov at IWA, as supplier of both Plaintiff and WRA, and
demanded IWA cease doing business with Plaintiff as a condition of WRA's

continued association with IWA, making numerous false and defamatory comments about Plaintiff. Plaintiff is informed Defendant made "horrible" statements about Plaintiff's principal Mr. Miller.

(e) Ogzewalla contacted FedEx Freightwire via a sales representative and demanded FedEx refuse to do business with Plaintiff as a condition of WRA's continued association with FedEx, making numerous false and defamatory comments about Plaintiff.

(f) Ogzewalla contacted Mike Militi with Wine Guardian and demanded Wine Guardian refuse to do business with Plaintiff as a condition of WRA's continued association with Wine Guardian, making numerous false and defamatory comments about Plaintiff.

(g) Ogzewalla contacted Iron Wine Cellars making numerous false and defamatory comments about Plaintiff.

(h) Ogzewalla openly told WRA employees to do all they can to shut down Plaintiff's operations.

22. As a result of Defendants' contact with Plaintiff's suppliers, many of Plaintiff's suppliers discontinued economic relations with Plaintiff, and Plaintiff's economic relations were otherwise damaged and/or interfered with by Defendants.

23. Additional evidence of Defendants' intentional attempts to interfere with Plaintiff's existing and prospective economic relations with its suppliers/vendors is attached hereto as **Exhibit S** in the form of emails from Defendants to Plaintiff's suppliers.

24.   Because of Defendants' unlawful actions, Plaintiff was forced to order supplies through a third party under the name of RB Sales Co. from some suppliers in order to comply with Mr. Ogzewalla's demands.

25.   After discovering in recent weeks that Plaintiff was using the name RB Sales Co., Ogzewalla personally registered the domain <rbsalesco.com> in February of 2018 in violation of the Anticybersquatting Consumer Protection Act (ACPA) as manifest by the Whois record attached hereto as **Exhibit T**.

26.   On or about June 30, 2014, Defendant Ogzewalla personally formed a new website for the purpose of impersonating Plaintiff's website, trade dress and common law trademarks at one of many domains he owned, <premierwinecellars.com>.

27.   Ogzewalla proceeded to use his website at <premierwinecellars.com> to mimic Plaintiff's website in almost every regard, updating <premierwinecellars.com> to copy Plaintiff's website every time Plaintiff changed anything on Plaintiff's website. Defendant used identical website services for user chat and product reviews to further mimic website appearance and functionality.

28.   A screenshot taken on October 25, 2015 of Premier Wine Cellars (PWC) attached as **Exhibit E** shows PWC to be nearly identical to Plaintiff's website at the same date as shown in the screenshot attached hereto as **Exhibit F**.



Defendants' website in October of 2015

Plaintiff's website on or about July 13, 2015

29.     In addition to changing the overall appearance of PWC to mimic Plaintiff's website, Defendants repeatedly lifted images wholesale from Plaintiff's website as evidenced by the screenshots of both websites attached as **Exhibit G** hereto as shown below (emphasis added in red).



30.     From its inception, Defendants have intentionally and falsely misrepresented PWC to be an Oregon company doing business in the city of Bend as shown by the exhibits collective attached hereto as **Exhibit H** and below.



31.     From its inception, Defendants have intentionally misrepresented and/or forged information about PWC to create the illusion of legitimacy in an attempt attract market share from Plaintiff, including prominently posting false photographs of PWC's nonexistent headquarters in Bend, Oregon as shown in the screenshot of PWC website in **Exhibit I** hereto.



32.     This photograph Defendants have posted at PWC's website and elsewhere across the Internet is not a photograph of PWC's Oregon facility, but rather a photograph of Defendant WRA's building in Utah with the signage reading "Premier Wine Cellars" photo-shopped by Defendants onto the photograph.

33.     Defendants falsely represent on their contact us page that the nonexistent building shown above is located in Bend, Oregon as manifest by the



Contact Us page also included in **Exhibit I** hereto and shown to the right.

34.   Defendants make further false statement on their website(s), including inviting prospective customers to "step in and see our showroom" knowing Defendants have no showroom.

35.   In an attempt to deceptively increase its market share at Plaintiff's expense and to dilute the effect of legitimate negative reviews of PWC and WRA, Defendants began posting false positive reviews of PWC and WRA on Google Trusted Reviews as manifest by **Exhibit J** hereto.





36.   Upon information and belief, the positive 5 star reviews of PWC and WRA are forgeries by Defendants' employees, principals or independent contractees, while all negative 1 star reviews of PWC are by legitimate PWC customers.

37.   Defendants' employees have attempted to interfere with nearly every aspect of Plaintiff's business model upon direct personal order of Jeff Ogzewalla, including repeatedly opening accounts with Plaintiff's suppliers, for the purpose of mimicking Defendant's exact same product offerings and eventually using Defendants' influence to persuade suppliers to cut supplies to Plaintiff, including opening accounts subsequently to Plaintiff with Wine Enthusiast, Eco-Wine-Racks, STACT, True Fabrications and others.

38.  All of these actions manifest not just an intentional attempt to destroy Plaintiff's actual and prospective economic relations, but a recognition of the notoriety and repute of Plaintiff and Plaintiff's common law marks.

39.  Defendants have repeatedly infringed common law trademarks of Plaintiff.

40.  PWC was originally using the logo shown to the right as manifest by **Exhibit K** hereto:



41.  Plaintiff began using a logo showing a wine bottle silhouetted by a dark background as shown the to the right:

42.  Thereafter, Defendants began using a logo showing a wine bottle silhouetted by a dark background as shown the to the right:

43.  In 2015, Vino Grotto announced the launch of its *American Series* wine cellar kits.

44.  Within days, Defendant Ogzewalla announced the launch of his *All-American Series* wine cellar kits shown below and in **Exhibit V** hereto.



45.  On October 3, 2015, Vino Grotto announced in a press release attached as **Exhibit L** hereto the release of its new *Professional Series* wine cellar kits having 3.75" bottle cubicles.

46.   Thereafter Defendants renamed their *All-American Series* to *Pro Series* wine cellar kits as shown in **Exhibit M** hereto.

47.   In January of 2016, Vino Grotto announced the launch of its *Home Collector Series™* wine cellar kits as manifest by **Exhibit N** hereto using the shown logo/stylized trademark:

  

48.   In October of 2017, Defendants launched the competing *Home Collector Series* wine cellar kits using the exact same name and a confusingly similar logo/stylized trademark as shown in **Exhibit O.**

49.   Since 2014, Plaintiff has labeled its brand name (as well as its product names) as protected with the ™ common law trademark symbol, including VINO GROTTO.

50.   On dozens of other occasions, Defendants modified the PWC site to mimic Plaintiff's site and "sales events" as shown in examples included in **Exhibit P** hereto.

| Defendant's Website Home Page | Plaintiff's Website Home Page |
| --- | --- |

  

51.    Plaintiff has common law trademark rights in the mark VINO GROTTO and HOME
       COLLECTOR SERIES, and has exclusive rights to use of the Marks.   Through
       continuous use, Plaintiff has established notoriety and secondary meaning in the VINO
       GROTTO and HOME COLLECTOR SERIES marks.

52.    Plaintiff has established secondary meaning in the marks VINO GROTTO and HOME
       COLLECTOR SERIES. This is true given the nature and extent of advertising as well as
       member and public recognition.

53.    As a result of the manhours, investments, advertisements, website, marketing, and sales,
       Complainant has built the marks VINO GROTTO and HOME COLLECTOR SERIES
       into the distinctive identifiers of Complainant's products which they are.   Years of effort
       have culminated in the marks VINO GROTTO and HOME COLLECTOR SERIES
       becoming well-known across the wine rack market.

54.    The marks VINO GROTTO and HOME COLLECTOR SERIES have become famous,
       and the purchasing public, vendors and other entities have come to recognize Plaintiff's
       Complainant's common law marks as the distinctive identifier which they are.

55.    Upon information and belief, in 2016 Defendant Ogzewalla offered Plaintiff's
       supplier/vendor Wayne Bailey of Creekside Manufacturing money to stop doing business
       with Plaintiff and to "cut Plaintiff off" from further orders.

56.    Defendants have posted cost-per-click advertisement across the Internet infringing
       Plaintiff's common law rights in the VINO GROTTO mark and other common law
       marks.

57.    As manifest by **Exhibit Q** hereto, Defendants are using Plaintiff's trademarks to link the
       PWC website across Google, Yahoo!, Bing and other search engines using cost-per-click

advertisements to drive traffic intended for the Plaintiff to the Defendants' websites at both <premierwinecellars.com> and <wineracksamerica.com>.

58. The use of Plaintiff's common law marks to drive traffic to Defendants' website constitutes trademark infringement.

59. Consumers are confused and lured using Defendants' deception to Defendants' website believing they are arriving at Plaintiff's website.

60. Defendants' advertisements create identity confusion on the part of prospective customers of Plaintiff. Defendant copies Plaintiff's cost-per-click advertisements identically in order to interfere with Plaintiff's advertising business model as shown in examples below and included in **Exhibit Q** hereto and infringe Plaintiff's marks.



61.   Defendants' actions have persisted continuously for more than four years without cessation.

62.   Within the last few week, Plaintiff observed Defendants beginning a new round of deceptive marketing practices, taking customer reviews of WRA and changing them to appear as reviews of PWC as manifest by the reviews show collectively in **Exhibit R** hereto (emphasis added in red) and summarized below:



63. Defendants' actions have and will continue to irreparably harm Plaintiff.

64. Upon information and belief, all of Defendants' action were taken at the direct instruction of Ogzewalla.

*Plaintiff's Damages*

65. Plaintiff has suffered millions in damages as a consequence of Defendants' actions. Plaintiff's suppliers have refused to do business with Plaintiff and denied Plaintiff's credit lines. Millions of dollars in revenue has been diverted by Defendants' actions away from Plaintiff, including away to Defendants using forged images, images stolen

straight off Plaintiff's website(s), reviews, and through other tortious means including trade libel.  Plaintiff's common law marks, including VINO GROTTO and HOME COLLECTOR SERIES, have been infringed and diluted by Defendants.  Thousands of customers have chosen not to do business with Plaintiff as a direct result of Defendants' false and defamatory statement thereon, resulting in damages in the millions of dollars.

66.    Defendants' unlawful conduct has and will damage the Plaintiff through the loss of customers, profits, business, reputation, and good will.  Plaintiff has suffered further damage through expenditures associated with bringing this action.

## FIRST CAUSE OF ACTION
### UNFAIR COMPETITION
### 15 U.S.C. § 1125(a)

67.    Plaintiff incorporates and re-alleges all of the foregoing paragraphs as if fully set forth herein.

68.    On information and belief, Defendants'' actions, in commerce, to entice Internet consumers to Defendants' PWC and WRA websites through the use of Plaintiff's trademark are likely to cause confusion or mistake, or to deceive as to the affiliation, connection, or association of the Defendants' goods and services with Plaintiff or Plaintiff's trademarks; or as to the origin, sponsorship, or approval of the Defendants' goods, services, and commercial activities by Plaintiff under the VINO GROTTO trademark.

69.    Defendants' continued use of the VINO GROTTO trademark without the prior authorization of Plaintiff infringes Plaintiff's exclusive rights in that trademark and constitutes violations of Section 43 of the Lanham Trademark Act, 15 U.S.C. § 1125(a).

70.     Defendants' actions as described above have also caused and are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with Plaintiff, or as to the origin, sponsorship, or approval of Plaintiff's goods, services, or commercial activities by Plaintiff, and thus constitute false designations of origin, passing off, and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(a).

71.     Defendants have committed the acts alleged above with the previous knowledge of Plaintiff's use and superior rights to the VINO GROTTO trademark and HOME COLLECTOR SERIES trademarks.

72.     Further, Defendants' actions were for the willful and calculated purpose of trading upon Plaintiff's goodwill and for the willful and calculated purpose of misleading and deceiving purchasers and the public with an intent to reap the benefit of the VINO GROTTO trademark.

73.     Defendants have intended to divert consumers from Plaintiff to harm Plaintiff's goodwill in the Marks.

74.     Plaintiff has been damaged extensively as a result of Defendants' unlawful conduct.

75.     By reason of Defendants' acts of false designation as alleged above, Plaintiff has suffered, and will continue to suffer, substantial damage to its business reputation and goodwill, as well as diversion of trade and loss of profits in an amount not yet ascertained. Plaintiff is entitled to damages in an amount that will be ascertained according to proof pursuant to 15 U.S.C. §1117.

76.     Defendants' acts alleged above have caused and will cause irreparable harm to Plaintiff for which Plaintiff has no adequate remedy at law in that: (i) if Defendants' wrongful

conduct continues, consumers are likely to become further confused about the nature of Plaintiff's services; (ii) Plaintiff's VINO GROTTO trademark is a unique intellectual property, which has no readily determinable value; (iii) the infringement by Defendants constitutes an interference with Plaintiff's goodwill and customer relationships; and (iv) Defendants' wrongful conduct, and the damages resulting to Plaintiff, is continuing. Plaintiff is entitled to injunctive relief pursuant to 15 U.S.C. §1116(a).

77.     Plaintiff is also entitled to recover its attorney fees and costs of suit from Defendants pursuant to 15 U.S.C. § 1117.

## SECOND CAUSE OF ACTION
## COMMON LAW UNFAIR COMPETITION

78.     Plaintiff realleges and reincorporates each of the preceding paragraphs as though fully set forth herein.

79.     Plaintiff has invested, and continues to invest, significant time, money, and other resources in marketing Vino Grotto products, and in creating goodwill with the online community.

80.     At all relevant times, Vino Grotto has been engaged in the business of marketing and selling wine racks in interstate commerce via the Internet, including on <vinogrotto.com>.

81.     At all relevant times, Defendants has been engaged in the business of marketing and selling wine racks in interstate commerce via the Internet, including on <premierwineracks.com> and <wineracksamerica.com>.

82.     At all relevant times, Defendants knew PWC was not doing business in Bend, Oregon, that photographs of PWC's operations and building were forged, that content on the

PWC was misappropriated from Plaintiff, and that reviews Defendants had posted online were forged.

83. Defendants' statements with regard to these matters are utterly false and untrue statements of material facts that misrepresent the nature, characteristics, and quality of Defendants' products and are intended to and likely to deceive the public.

84. Nonetheless, Defendants made these false and misleading statements of fact willfully with an intent to deceive and mislead the public into believing that Defendants organization and products were superior to their actual quality and with the intention of impersonating and/or misappropriating the good will of Plaintiff's marks, products and/or trade dress.

85. Defendants made each of the false statements identified herein in a commercial advertisement or promotion because they were made on Defendants' commercial websites and third-party review sites.

86. Defendants' posting of false favorable customer reviews for WRA and PWC identified herein were made in commercial advertising and promotion because they were posted on the product page for Defendants on at least Google.com.

87. Defendants' false favorable   customer reviews identified   herein   touting   and recommending Defendants' products misrepresent the nature, characteristics, and qualities of Defendants' products because the reviews and recommendations stated therein are fabrications and do not reflect the actual experiences of customers that purchased Defendants' products.

88.   Defendants' false and misleading statements identified herein have caused, and continue
      to cause damage to Vino Grotto's business, reputation, goodwill, and the loss of sales and
      profits Vino Grotto would have made, but for Defendants' acts.

89.   Vino Grotto is entitled to recover any profits obtained by Defendants as a result of its
      unfair competition.

90.   This is an exceptional case, and Vino Grotto is therefore entitled to recover its attorney
      fees from Defendants.

91.   As a result of the unfair competition complained of herein, Vino Grotto has been
      irreparably damaged to an extent not yet determined, and will continue to be irreparably
      damaged by such acts in the future unless Defendants are enjoined by this Court from
      committing further acts of unfair competition. Such irreparable harm includes as least (i)
      erosion to the demand for Plaintiff's products as consumers of Defendants' inferior
      products are induced to purchase by fake reviews and do not perform as advertised; and
      (ii) erosion of Plaintiff's online ranking on Google and Bing. These harms cannot be
      calculated or compensated for in monetary terms, and are therefore irreparable.

92.   Vino Grotto is also entitled to an injunction prohibiting Defendants from committing
      further acts of unfair competition, including an order requiring Defendants to circulate
      corrective advertising and recalling its falsely-labeled products.

**THIRD CAUSE OF ACTION**
**UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN**
**15 Utah Code § 13-5a-101 et seq.**

93.   Plaintiff realleges and reincorporates each of the preceding paragraphs as though fully set
      forth herein.

94.     Upon information and belief, Defendant's intentional business acts and practices of using the mark VINO GROTTO, HOME COLLECTOR SERIES, and trade dress in connection with its products are unlawful, unfair, and fraudulent.

95.     Defendants' acts have led to a material diminution in value of Plaintiff's intellectual property, including the VINO GROTTO mark and other marks.

96.     Defendants' acts, as alleged above, constitute unfair competition as defined by Utah Code § 13-5a-102(4)(a).

97.     Plaintiff is entitled to damages for Defendant's acts of unfair competition pursuant to Utah Code § 13-5a-103(1)(b)(i), the amount of which will be determined by an accounting and subject to proof at trial.

98.     Plaintiff is also entitled to its costs and attorney fees pursuant to Utah Code § 13-5a-103(1)(b)(ii), the amount of which will be determined at trial.

99.     Plaintiff is also entitled to punitive damages for the acts of unfair competition by Defendant pursuant to Utah Code § 13-5a-103(1)(b)(iii), at the discretion of the Court.

## FOURTH CAUSE OF ACTION
### TRADE LIBEL
### 15 U.S.C. § 1125(a)

100.    Plaintiff realleges and reincorporates each of the preceding paragraphs as though fully set forth herein.

101.    The statements and representations made by Defendants of and concerning Plaintiff to Defendants' customers, vendors and suppliers included, but were not limited to disseminating and communicating false and misleading statements and unfounded misrepresentations about the business, goodwill, and reputation of Plaintiff.

102.  The aforementioned false statements and representations of and concerning Plaintiff were published, disseminated, or otherwise communicated by Defendants.

103.  The aforementioned false statements and representations made by Defendants of and concerning Plaintiff were published, disseminated, or otherwise communicated by Defendants across state borders and in interstate commerce.

104.  The aforementioned false statements and representations made by Defendants of and concerning Plaintiff were statements and representations of a commercial nature and constituted commercial speech since they were published, disseminated, or otherwise communicated with the intent of increasing Defendants' market share and revenue and/or decreasing Plaintiff's sales.

105.  As a direct and proximate result of Defendants' conduct as alleged herein, Plaintiff is entitled to recover damages from Defendants in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
## COMMON LAW DEFAMATION

106.  Plaintiff realleges and reincorporates each of the preceding paragraphs as though fully set forth herein.

107.  Defendants' actions as described above constitute defamation, in that:

(a)  Defendants have made, or knowingly conspired and agreed to be made, false statements regarding Plaintiff, identified and rebutted in detail in the above paragraphs, incorporated herein by reference as though listed here;

(b)  Defendants' statements constitute defamation per se, in that they defame Plaintiff in its trade;

(c)  Defendants knew or should have known that the statements published were false; and

(d)  Defendants published these statements to various third parties without privilege.

108.   As a proximate result of the foregoing acts, Defendants have caused actual harm to Plaintiff and are liable to Plaintiff for damages in an amount to be proven at trial.

109.   Defendants have engaged in conduct of an oppressive, fraudulent, and malicious nature, thereby entitling Plaintiff to an award of punitive damages.

110.   As a direct and proximate result of the actions, conduct, and practices of Defendants alleged above, Plaintiff has been damaged and will continue to be damaged.

111.   Plaintiff has no adequate remedy at law.

**SIXTH CAUSE OF ACTION**
**COMMON LAW TRADEMARK INFRINGEMENT - VINO GROTTO**

112.   Plaintiff realleges and reincorporates each of the preceding paragraphs as though fully set forth herein.

113.   Plaintiff is the owner of a valid and subsisting common law trademark in VINO GROTTO for wine bottle storage shelves.

114.   Defendants have deliberately and willfully attempted to trade on Plaintiff's longstanding and hard-earned goodwill in its VINO GROTTO mark and the reputation Plaintiff has established in connection with its products, as well as to confuse consumers as to the origin and sponsorship of Defendants' goods and to pass their products off as those of Plaintiff by running cost per click advertisements on Plaintiff's VINO GROTTO common law mark.

115.   Defendants' unauthorized and tortious conduct has also deprived and will continue to deprive Plaintiff of the ability to control the consumer perception of its products offered under Plaintiff's mark, placing the valuable reputation and goodwill of Plaintiff in the hands of Defendants.

116.   Defendants' conduct is likely to cause confusion, mistake or deception as to the affiliation, connection or association of Defendants with Plaintiff, and as to the origin, sponsorship or approval of Defendants and their products, in violation of common law.

117.   Internet Traffic to Defendants' website constitutes individuals initially interested and lured to Defendants by the notoriety of the Plaintiff's Mark.

118.   As a result of Defendants' aforesaid conduct, Plaintiff has suffered substantial damages, as well as the continuing loss of the goodwill and reputation established by Plaintiff in its marks. This continuing loss of goodwill cannot be easily calculated and thus constitutes irreparable harm and an injury for which Plaintiff has no adequate remedy at law.

119.   Plaintiff will continue to suffer irreparable harm unless this Court enjoins Defendants' conduct.

<u>SEVENTH CAUSE OF ACTION</u>
**COMMON LAW TRADEMARK INFRINGEMENT – HOME COLLECTOR SERIES**

120.   Plaintiff realleges and reincorporates each of the preceding paragraphs as though fully set forth herein.

121.   Plaintiff is the owner of a valid and subsisting common law trademark in HOME COLLECTOR SERIES for wine bottle storage shelves.

122.   Defendants have deliberately and willfully attempted to trade on Plaintiff's longstanding and hard-earned goodwill in its HOME COLLECTOR SERIES mark and the reputation Plaintiff has established in connection with its products, as well as to confuse consumers as to the origin and sponsorship of Defendants' goods and to pass their products off as those of Plaintiff by running cost per click advertisements on Plaintiff's HOME COLLECTOR SERIES common law mark as well as by otherwise advertising Defendants' products using Plaintiff's mark, including Defendants' website(s).

123.   Defendants' unauthorized and tortious conduct has also deprived and will continue to deprive Plaintiff of the ability to control the consumer perception of its products offered under Plaintiff's mark, placing the valuable reputation and goodwill of Plaintiff in the hands of Defendants.

124.   Defendants' conduct is likely to cause confusion, mistake or deception as to the affiliation, connection or association of Defendants with Plaintiff, and as to the origin, sponsorship or approval of Defendants and their products, in violation of common law.

125.   Internet Traffic to Defendants' website constitutes individuals initially interested and lured to Defendants by the notoriety of the Plaintiff's Mark.

126.   As a result of Defendants' aforesaid conduct, Plaintiff has suffered substantial damages, as well as the continuing loss of the goodwill and reputation established by Plaintiff in its marks. This continuing loss of goodwill cannot be easily calculated and thus constitutes irreparable harm and an injury for which Plaintiff has no adequate remedy at law.

127.   Plaintiff will continue to suffer irreparable harm unless this Court enjoins Defendants' conduct.

## EIGHTH CAUSE OF ACTION
### FALSE ADVERTISING
### 15 U.S.C. § 1125(a)

128.   Plaintiff realleges and reincorporates each of the preceding paragraphs as though fully set forth herein.

129.   Defendants have posted numerous forged reviews of their brand and products online.

130.   Defendants have placed these reviews in commercial advertising online.

131.   Defendants' have marketed their products using Plaintiff's marks on Defendants' website and through cost-per-click advertising.

132.   Defendants' false and forged reviews misrepresent the nature, characteristics, qualities and geographic origin of Defendants' goods.

133.   Defendant's false advertising is likely to cause confusion or mistake, and to deceive the purchasing public and others as to the affiliation, sponsorship, origin, or approval of Defendants' good.

134.   As a result of Defendants' false advertising, Plaintiff has suffered irreparable harm. Unless Defendants are permanently enjoined from further false advertising, Plaintiff will continue to suffer irreparable harm.

135.   A permanent injunction is necessary to prevent Defendants from further false advertising, including an order that Defendant cease all use of confusingly similar variations of Plaintiff's marks and remove forged reviews.

136.   As a result of Defendants' false advertising, Plaintiff has been injured and is entitled to damages.

## NINTH CAUSE OF ACTION
## CLAIM FOR CORRECTIVE ADVERTISING DAMAGES

137.   Plaintiff realleges and reincorporates each of the preceding paragraphs as though fully set forth herein.

138.   Defendants' actions set forth hereinabove constitute intentional business acts and practices that are unlawful, unfair, and fraudulent, including the false representations concerning: (i) customer satisfaction with Defendants' products; (ii) Plaintiff's solvency and liquidity; (iii) Defendants' honesty in trade; (v) false favorable reviews on online; and (vii) the quality of Defendants' and Plaintiffs' products.

139.   Defendants' unlawful and unfair competition is likely to cause confusion, mistake, and deception as to the characteristics, nature, and qualities of Plaintiff's product because

customers and prospective customers are likely to believe that Defendants' false representations are true.

140. By reason of the foregoing, Vino Grotto has suffered damages in the form of lost sales and irreparable harm to its reputation and goodwill for its family of wine storage products.

141. By reason of the foregoing, Vino Grotto has suffered damages in the form of lost sales and irreparable harm to its reputation and goodwill.

142. Vino Grotto is entitled to recover damages from Defendants as well as any profits obtained by Defendants as a result of its unlawful and unfair competition.

143. In light of the willfulness of Defendants' unlawful and unfair competition, Vino Grotto is entitled to an award of exemplary and punitive damages.

144. Vino Grotto is also entitled to an injunction prohibiting Defendants from committing further acts of unfair competition, including an order requiring Defendants to circulate corrective advertising and to recall its falsely marketed products.

145. Defendants have damaged Plaintiff by shutting down Plaintiff's supply chain and this action has been ruinous to the goodwill and reputation of Plaintiff's marks and products. Defendants have also otherwise caused misinformation in the marketplace as to the origin, source or sponsorship of Plaintiff's products.

146. Plaintiff seeks those damages arising from this advertising injury, including but not necessarily limited to monies sufficient to compensate Plaintiff for the damage to Plaintiff's goodwill and/or the cost for correcting the misinformation in the marketplace.

**TENTH CAUSE OF ACTION**
**INTENTIONAL INTERFERENCE WITH EXISTING AND PROSPECTIVE
ECONOMIC RELATIONS**

147.   Plaintiff incorporates and realleges all of the foregoing paragraphs as if fully set forth herein.

148.   Defendants have intentionally interfered with Plaintiff's existing and potential economic relations by shutting down Plaintiff's website to harm Plaintiff's economic relationships with other parties.

149.   Plaintiff has been injured as a result of Defendants' interference.

150.   Defendants interfered with Plaintiff's existing and potential economic relations through the improper means of inter alia: (a) encouraging suppliers to discontinue business with Plaintiff; (b) demanding suppliers discontinue business with Plaintiff as a condition of suppliers' continued business with Defendants; (c) falsely representing Defendants will not pay suppliers; (d) Defendants' posting of false online reviews of Defendants' products; and (3) publishing content across the Internet which has resulted in significant hardship to Plaintiff's operations and caused Plaintiff to lose significant benefit inherent in its economic relations.

151.   These actions have been undertaken by Defendants with the knowledge that other parties had an existing or prospective business relationship with Plaintiff and with the intention of interfering with that relationship.

152.   Defendants' wrongful interference with Plaintiff's business relations has been willful and deliberate and caused Plaintiff to incur loss and damage.

**ELEVENTH CAUSE OF ACTION**
**DECEPTIVE TRADE PRACTICES**
**15 Utah Code § 13-5a-101 et seq.**

153.   Plaintiff realleges and reincorporates each of the preceding paragraphs as though fully set forth herein.

154.   Plaintiff incorporates and realleges all of the foregoing paragraphs as if fully set forth herein.

155.   Defendants have engaged in unfair and deceptive trade practices as manifest by the allegations herein above.

156.   These deceptive trade practices include interfered with Plaintiff's existing and potential economic relations through the improper means of inter alia: (a) posting false review of Defendants' products online; (b) falsely representing Defendants' products to be those of Plaintiff; (c) Forging geographic location and origin information of Defendants' products; (d) falsely representing Defendants will not pay suppliers; (e) using Plaintiff's images, text, and trade dress on Defendant's website; and (f) disseminating defamatory information which has resulted in significant hardship to Plaintiff's operations and caused Plaintiff to lose significant benefit inherent in its economic relations.

157.   Plaintiff has been injured as a result of Defendants' unfair and deceptive actions.

158.   These actions have been undertaken by Defendants intentionally and damaged Plaintiff.

159.   Plaintiff is entitled to damages for Defendants' actions.

## TWELFTH CAUSE OF ACTION
### UNJUST ENRICHMENT

160.   Plaintiff realleges and reincorporates each of the preceding paragraphs as though fully set forth herein.

161.   Through unlawful means, Defendants have benefited economically at Plaintiff's expense.

162.   A benefit has been conferred on Defendants at Plaintiff's expense in the form of lost profits and lost market share.

163.   Defendants appreciated and had knowledge of this benefit has Defendants sought and schemed unlawfully for its realization.

164.    Defendants accepted and have retrained this benefit under such circumstances as to make it inequitable for Defendants to retain this benefit without payment of its value to Plaintiff.

165.    Defendants are liable for unjust enrichment to Plaintiff in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, on the above claims, Plaintiff prays for judgment against Defendants as follows:

1.      For a preliminary and permanent injunction, under 15 U.S.C. § 1116, restraining and enjoining Defendant, its agents, servants, employees, officers and those persons in act of concert or participation with Defendant, from any further deceptive trade practice, intentional interference, trademark infringement of Plaintiff's marks, further false advertising, and further defamatory conduct – including an order than Defendants promptly send corrective notice to Plaintiff's suppliers, remove false reviews from the Internet, notify Defendants' customers of Defendants' tortious actions and false representations, and modify Defendants' websites.

2.      For judgment holding Defendants liable for false advertising pursuant to 15 U.S.C. § 1125(a);

3.      That the Court enter a judgment against Defendants they have infringed and/or are infringing Plaintiff's common law trademarks pursuant to 15 U.S.C. § 1125(a);

4.      For a judgment holding Defendant liable for unfair competition pursuant to Utah Code § 13-5a-102(4)(a);

5.    That Defendants pay damages to Plaintiff for other violations of § 43 of the Lanham Act, codified at 15 U.S.C. § 1125.

6.    For a judgment holding Defendant liable for injurious falsehood, trade libel, and/or defamation;

7.    For a judgment holding Defendant liable for intentional interference with economic relations;

8.    For a judgment holding Defendant liable for deceptive trade practices pursuant to Utah Code § 13-11a-3;

9.    For an award of costs, profits, and damages, which damages and profits are then trebled, under 15 U.S.C. § 1117;

10.   That Defendants' unlawful actions be declared exceptional and Plaintiff be awarded its reasonable attorney fees under, inter alia, 15 U.S.C. § 1117;

11.   For an award of damages pursuant to Utah Code § 13-5a-103(10(b)(i), in amount to be established upon proper proof at trial;

12.   For costs and attorney fees pursuant to Utah Code § 13-5a-103(1)(b)(ii);

13.   For punitive damages pursuant to Utah Code § 13-5a-103(1)(b)(iii);

14.   For any other such relief as the Court may deem necessary.


DATED AND SIGNED this the 28th day of May, 2018.


/s/

_____

STEVEN L. RINEHART
*Attorney for Plaintiff*

Steven L. Rinehart (USB #11494)
110 S. Regent Street, Suite 200
Salt Lake City, UT 84111
Telephone: (888) 941-9933
Mobile: (801) 347-5173
Facsimile: (801) 665-1292
Email: srinehart@vestedlaw.com
*Attorney for Plaintiff*

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JIVE Commerce, LLC D/B/A Vino Grotto, a Utah limited liability company;<br><br>                                        Plaintiff,<br><br>vs.<br><br>Wine Racks America, Inc. D/B/A Premier Wine Cellars, a Utah corporation; and Jeffrey Ogzewalla, an individual;<br><br>                                        Defendants. | Case No. 1:18-cv-49<br><br>**V E R I F I C A T I O N**<br><br>Magistrate Judge Paul Warner |

I, Jason Miller, having personal knowledge of the matters set forth herein and being competent to testify about them if called to do so at trial, state as follows:

1. I declare that I am over the age of 18 and competent to make this declaration.

2. I am a principal of the Plaintiff corporation to this matter.

3. I have read the foregoing VERIFIED COMPLAINT and know the contents thereof.

4. The allegations are true and correct and are based upon my own personal knowledge and existing corporate documents, except for those matters stated upon information and belief. As to matters stated upon information and belief, I believe them to be true.

5. Clients/customers rely on the false online reviews of Defendants to provide them with ordering information.

6.  Clients/customers rely on the false online reviews of Defendants to provide them with ordering information.

7.  The allegations in the attached FIRST AMENDED VERIFIED COMPLAINT are true upon information and belief.

8.  If Defendants' actions are not remedied, Plaintiff and its owners will suffer irreparable harm.


I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge.  So sayeth the declarant.


EXECUTED this the 26th day of May 2018.


_____

Jason Miller


In the County of _Davis_, State of Utah, on this _26_ day of _May_, 20 _18_, a notary public, personally appeared _Jason miller_, proved on the basis of satisfactory evidence to be the person(s) whose name(s) (is/are) subscribed to this instrument, and acknowledged (he/she/they) executed the same.

_____
Notary Signature and seal

MATTHEW L HOBBS
Notary Public • State of Utah
Commission # 690415
My Commission Expires
August 1, 2020

36